UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO.  0:12-cv-62056-RSR

GULFSTREAM MEDIA GROUP, INC.,
a Florida corporation,

       Plaintiff,

v.

PD STRATEGIC MEDIA, INC.,
a Florida corporation; and
FORT LAUDERDALE MAGAZINE, INC.,
a Florida corporation,

       Defendants.

_____/

## AMENDED COMPLAINT

Plaintiff, Gulfstream Media Group, Inc., ("Gulfstream"), sues Defendants PD Strategic Media, Inc. ("PDSM") and Fort Lauderdale Magazine, Inc. ("FLM") (collectively, the "Defendants") and alleges:

### NATURE OF THE ACTION

1.      Gulfstream is, and has been for many years, the owner and senior user of the common law trademark for FORT LAUDERDALE for magazines and other periodicals.  As such, it seeks to prevent Defendants, the junior users of the mark FORT LAUDERDALE MAGAZINE, from infringing Plaintiff's senior use of that mark, from unfairly competing with Gulfstream, and from trading on the goodwill that Gulfstream has established in its mark, FORT LAUDERDALE for magazines and other periodicals.

2.      This is also an action for unfair competition, trademark infringement pursuant to Section 43(a) of the Lanham Act and cancellation of Defendants' registrations for FORT

LAUDERDALE MAGAZINE under the Lanham Act, 15 U.S.C. § 1119, and Fla. Stat. § 495.101.

3.      Specifically, Gulfstream demands: (a) damages from Defendants for their infringing and improper use of the mark, FORT LAUDERDALE MAGAZINE in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (b) an order of permanent injunction preventing Defendants from further infringing through their unauthorized use of the mark, FORT LAUDERDALE MAGAZINE; and (c) an order directing cancellation of Defendants' Florida and federal supplemental trademark registrations for FORT LAUDERDALE MAGAZINE in accordance with Fla. Stat. § 495.101 and 15 U.S.C. § 1119 respectively.

## PARTIES, JURISDICTION, AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 28 U.S.C. § 1121 involving allegations involving the Lanham Act, and jurisdiction over the State law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this Division of this District pursuant to 28 U.S.C. § 1391 because Defendants reside in and conduct business in this District, and the causes of action upon which this complaint is based occurred in this Division of this District.

6.      Plaintiff Gulfstream is a corporation organized and existing under the laws of Florida with its principal place of business in Fort Lauderdale, Florida.

7.      Defendant PDSM is a corporation organized and existing under the laws of Florida with its principal place of business in Fort Lauderdale, Florida.

8.      Defendant FLM is a corporation organized and existing under the laws of Florida with its principal place of business in Fort Lauderdale, Florida.

2

## GULFSTREAM AND ITS FORT LAUDERDALE TRADEMARK

9.      For nearly 50 years, Gulfstream has been a recognized leader in the magazine industry.  Among its publications, Gulfstream publishes several lifestyle magazines, including *Boca Life Magazine*, *The Palm Beacher*, *Jupiter Magazine*, *Stuart Magazine* and *Fort Lauderdale*.

10.     In addition to print media, Gulfstream is also at the forefront of digital magazine technology by providing editorially extended digital and iPad® editions of its titles, including but not limited to its FORT LAUDERDALE magazine.

11.     With respect to the FORT LAUDERDALE trademark, Gulfstream first began publishing and circulating magazines bearing the FORT LAUDERDALE trademark as early as July 1, 1998.

12.     For over 14 years, Gulfstream has consistently published seasonal or monthly issues of magazines bearing the FORT LAUDERDALE trademark.

13.     Gulfstream magazines bearing the FORT LAUDERDALE trademark are distributed to select high end hotels, resorts, and marinas including but not limited to the Ritz Carlton, the Double Tree, the Hyatt Regency, Marriott, and the Bahia Mar Beach Resort.

14.     Gulfstream magazines bearing the FORT LAUDERDALE trademark are marketed to the tourism and travel industries, and are often distributed in interstate commerce outside of Florida and to customers who travel to and from Florida from locations throughout the United States and abroad.

15.     Magazines bearing the FORT LAUDERDALE trademark have generated in excess of $12 million in revenue over the years for Gulfstream.

3

16.     Digital copies and subscriptions of magazines bearing the FORT LAUDERDALE trademark are also available in interstate commerce through the internet, including through the domain name and URL www.fortlauderdalemag.com.

17.     The digital versions of magazines bearing the FORT LAUDERDALE trademark are also offered, sold, distributed, and circulated in interstate commerce to consumers, potential consumers, advertisers, and potential advertisers throughout the United States and abroad.

18.     Over the years, Gulfstream has expended considerable time, effort and money advertising and promoting its trademark, FORT LAUDERDALE for and in connection with the sale of magazines and periodicals, including but not limited to, the hiring and maintaining of marketing and sales representatives throughout the United States.

19.     As a result of all of the foregoing efforts, the products and services offered, sold, and distributed under the FORT LAUDERDALE trademark have come to be well known by the consuming public so as to create "secondary meaning" in that the consuming public has come to associate the trademark FORT LAUDERDALE with the goods and services promulgated by Plaintiff.

**DEFENDANTS' ACTIONS**

20.     On July 22, 1998, Radioland, Inc. ("Radioland") filed for a trademark registration (the "Florida Registration") for the word mark FORT LAUDERDALE MAGAZINE with the Florida Department of State in connection with "printed matter, namely magazines addressing topics of general interest on a local and national level."

21.     Although the Florida Registration claims a first use date of May 10, 1998, the specimen submitted in connection with the application does not identify or corroborate this purported first use date.

22.     On December 7, 1998, Radioland purportedly assigned the Florida Registration to Defendant FLM.

23.     Upon information and belief, prior to 1999, neither Radioland nor FLM published, distributed, or sold in commerce any magazines or similar printed media bearing the FORT LAUDERDALE MAGAZINE mark.

24.     On May 11, 1999, FLM filed for a trademark registration with the United States Patent and Trademark Office ("USPTO") for the word mark FORT LAUDERDALE MAGAZINE in connection with "printed publications namely magazines in the field of fashion, dining, theatre, art, music, sports, travel and other topics of general interest on a local, national, and international level in class 16."

25.     On March 21, 2000, the mark FORT LAUDERDALE MAGAZINE was registered on the USPTO's Supplemental Register (the "Supplemental Registration").

26.     Although the Supplemental Registration claims a purported first use date of December 1, 1997 and purported first use in interstate commerce date of June 4, 1998 (neither of which are in accordance with the purported May 10, 1998 alleged first use date set forth in the Florida Registration), the specimen submitted in connection with that application similarly does not identify or corroborate either of these purported first use dates.

27.     Upon information and belief, between 1999 and 2011, FLM engaged in only limited distribution of its products, and published no more than eleven (11) issues of magazines bearing the mark FORT LAUDERDALE MAGAZINE.

28.     Upon information and belief, apart from these eleven (11) issues, there has been no other interstate or commercial use of the mark FORT LAUDERDALE MAGAZINE in connection with general interest magazines.

29.     Upon information and belief, FLM has never maintained a full-time staff of more than one employee in connection with the alleged publication, distribution, and sale of magazines bearing the FORT LAUDERDALE MAGAZINE trademark.

30.     Upon information and belief, FLM's infrequent publication frequency, minimal distribution, and minimal revenues generated from publications bearing the FORT LAUDERDALE MAGAZINE mark do not support a bona fide commercial use of the mark in interstate commerce or otherwise.

31.     On January 18, 2012, Defendant FLM assigned its rights, if any, to the Florida Registration to Defendant PDSM.

32.     On or about November 1, 2012 Defendants PDSM and FLM launched a seasonal magazine under the mark FORT LAUDERDALE MAGAZINE, thereby causing harm to the common law rights and good will established by Plaintiff over the course of the past 14 years.

33.     Defendants have made statements through their website, www.flmag.com, which confirm that Defendants' previous use of the mark FORT LAUDERDALE MAGAZINE has been merely token or *de minimis*, and further demonstrate that Defendants have yet to distribute

a consistently published, seasonal or monthly magazine bearing the trademark FORT LAUDERDALE MAGAZINE to the consuming public.

34.    For example, Defendants have stated:

> In the front of the book, **Fort Lauderdale Magazine will cover** fashion, shopping, culture, and events.  **We will do so** with large, bold photographs and articles that offer a new take not found locally.  **We will have** no fluff, no filler.  In the back, **we will publish** the kind of long-form journalism unique to South Florida.  Our feature stories **will be impeccably researched** and fact-checked.  **We will ask questions** nobody else has asked, and **we will challenge** the establishment without endorsing candidates or political parties.  **We will also offer features** that entertain, fiction that's original, and page-turning photo essays that are stunning.

http://www.flmag.com/fort-lauderdale-magazine-contributors-guide.

> Published six times a year, **the magazine will inform**, challenge, delight, and inspire the way we live, work, and play in the city.

http://www.flmag.com/Fort_Lauderdale_Magazine_Media_Kit.pdf.

35.    Gulfstream has performed all conditions precedent that have not been otherwise waived or excused.

## COUNT I
### Federal Unfair Competition and False Designation of Origin

36.    Gulfstream incorporates by reference the allegations in paragraphs 1 through 35 as if fully set forth herein.

37.    Gulfstream is the owner of the valid and protectable trademark, FORT LAUDERDALE.

38.    Gulfstream's use of the trademark FORT LAUDERDALE has been and continues to be in a way that affects interstate commerce.

39.     Gulfstream's use of the trademark FORT LAUDERDALE was prior to Defendants' unauthorized use of the mark, FORT LAUDERDALE MAGAZINE.

40.     There is a likelihood of consumer confusion caused by Defendants' unauthorized use of the mark, FORT LAUDERDALE MAGAZINE.

41.     Defendants' unauthorized use of the mark, FORT LAUDERDALE MAGAZINE was done willfully, intentionally, in bad faith, and constitutes a violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

42.     Defendants acts are greatly and irreparably damaging to Gulfstream and will continue to be greatly and irreparably damaging to Gulfstream unless enjoined by this Court, as a result of which, Gulfstream is without an adequate remedy at law.

## COUNT II
## Cancellation of Supplemental Registration Under 15 U.S.C. § 1119

43.     Gulfstream incorporates by reference the allegations in paragraphs 1 through 35 as if fully set forth herein.

44.     This is a claim for cancellation of Defendants' supplemental trademark registration for the mark FORT LAUDERDALE MAGAZINE, U.S. Registration No. 2,334,029.

45.     Defendants' use of the mark FORT LAUDERDALE MAGAZINE is likely to cause confusion, mistake, or to deceive purchasers and potential purchasers into believing that Defendants' products and services are the same as Gulfstream's products and services or that Defendants' products and services are in some way affiliated with, sponsored, authorized, approved, sanctioned, or licensed by Gulfstream, in violation of Section 1125 of the Lanham Act.

46.     Gulfstream has conducted due diligence with respect to the Defendants' use of the mark FORT LAUDERDALE MAGAZINE in connection with general interest magazines and publications.

47.     Upon information and belief, Defendants have never had a bona fide commercial use of the mark FORT LAUDERDALE MAGAZINE in the ordinary course of trade and have therefore abandoned same.

48.     The continued registration of Defendants' mark FORT LAUDERDALE MAGAZINE is inconsistent with Gulfstream's rights in and to the FORT LAUDERDALE trademark, and is damaging to Gulfstream.

49.     Gulfstream seeks the cancellation of Supplemental Trademark Registration No. 2,334,029 on the basis that it is confusingly similar to Gulfstream's FORT LAUDERDALE Trademark.

50.     Gulfstream seeks the cancellation of Supplemental Trademark Registration No. 2,334,029 on the basis that Defendants have abandoned the mark FORT LAUDERDALE MAGAZINE.

## COUNT III
### Cancellation of Florida Registration Under Fla. Stat. § 495.101

51.     Gulfstream incorporates by reference the allegations in paragraphs 1 through 35 as if fully set forth herein.

52.     This is a claim for cancellation of Defendants' state trademark registration for the mark FORT LAUDERDALE MAGAZINE, Florida Registration No. T98000000829.

53.     Defendants' use of the mark FORT LAUDERDALE MAGAZINE is likely to cause confusion, mistake, or to deceive purchasers and potential purchasers into believing that

Defendants' products and services are the same as Gulfstream's products and services or that Defendants' products and services are in some way affiliated with, sponsored, authorized, approved, sanctioned, or licensed by Gulfstream, in violation of Section 495.101, Fla. Stat.

54.    Gulfstream has conducted due diligence with respect to the Defendants' use of the mark FORT LAUDERDALE MAGAZINE in connection with general interest magazines and publications.

55.    Upon information and belief, Defendants have never had a bona fide commercial use of the mark FORT LAUDERDALE MAGAZINE in the ordinary course of trade and have therefore abandoned same.

56.    The continued registration of Defendants' mark FORT LAUDERDALE MAGAZINE is inconsistent with Gulfstream's rights in and to the FORT LAUDERDALE trademark, and is damaging to Gulfstream.

57.    Gulfstream seeks the cancellation of Florida Registration No. T98000000829 on the basis that it is confusingly similar to Gulfstream's FORT LAUDERDALE Trademark.

58.    Gulfstream seeks the cancellation of Florida Registration No. T98000000829 on the basis that Defendants have abandoned the mark FORT LAUDERDALE MAGAZINE.

## COUNT IV
### Common Law Unfair Competition

59.    Gulfstream incorporates by reference the allegations in paragraphs 1 through 35 as if fully set forth herein.

60.    Defendants acts constitute unfair competition in that:

(a)    Said acts enable and will continue to enable Defendants to obtain the benefit of and trade on the goodwill of Gulfstream;

10

(b)     Said acts damage and will continue to damage Gulfstream's goodwill in that Gulfstream does not have control over the business and products of Defendants;

(c)     Said acts have caused and are likely to continue to cause confusion, mistake, or deception of the public; and

(d)     Said acts will result in the unjust enrichment of Defendants.

61.     Upon information and belief, Defendants acts of unfair competition were done willfully, intentionally, and in bad faith.

62.     Defendants acts are greatly and irreparably damaging to Gulfstream and will continue to be greatly and irreparably damaging to Gulfstream unless enjoined by this Court, as a result of which, Gulfstream is without an adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Gulfstream prays for a Judgment for Damages, Cancellation, and Permanent Injunctive Relief as follows:

A.     An order cancelling U.S. Trademark Registration No. 2,334,029 for the mark FORT LAUDERDALE MAGAZINE, pursuant to 15 U.S. C. § 1119.

B.      An order cancelling Florida Registration No. T98000000829 for the mark FORT LAUDERDALE MAGAZINE, pursuant to Fla. Stat. § 495.101.

C.     Permanent Injunctive relief ordering that Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, who receive actual notice of the Order by personal service or otherwise, be permanently enjoined and restrained from:

1.    Using FORT LAUDERDALE MAGAZINE or any confusingly similar variation of FORT LAUDERDALE;

2.    Publishing, producing, marketing, selling, transporting, distributing, moving and/or otherwise circulating any and all services or products, including, but not limited to general interest magazine products or services related thereto, which bear the mark FORT LAUDERDALE MAGAZINE mark or any confusingly similar variation of FORT LAUDERDALE; and

3.    Acting in any manner which causes Defendants' products, including, but not limited to general interest magazines to be in any way confused with Gulfstream, Gulfstream's products or services, and the goodwill associated with FORT LAUDERDALE.

D.    Ordering that Defendants be required to account for and pay over to Gulfstream an amount equal to Gulfstream's actual damages, and all of the gains, profits, savings, and advantages realized by Defendants as a result of Defendants' unfair competition and infringement, and if Defendants' actions are deemed willful and intentional, then such amount should be increased to an amount not exceeding three times of such amount.

E.    An order awarding Gulfstream for the costs of this action.

F.    An order awarding Gulfstream for any and all reasonable attorney's fees incurred as a result of Defendants' unfair competition and infringement.

G.    Any and all other relief as deemed proper or just by this Court.

## DEMAND FOR TRIAL BY JURY

Gulfstream hereby demands a jury trial on all issues triable of right by a jury.

Dated:  November 26, 2012

Respectfully submitted,

**FELDMAN GALE, P.A.**
*Counsel for Plaintiff*
One Biscayne Tower, 30th Floor
2 South Biscayne Boulevard
Miami, FL 33131
Telephone No.  (305) 358-5001
Telefacsimile No.  (305) 358-3309


By: *s/ Richard Guerra*
    James A. Gale
    Florida Bar No. 371726
    E-Mail: jgale@feldmangale.com
    Richard Guerra
    Florida Bar No. 689521
    E-Mail:  rguerra@feldmangale.com


## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY on this 26th day of November, 2012, the undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  The undersigned also certifies that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


    *s/ Richard Guerra*

**SERVICE LIST**
*Gulfstream Media Group, Inc. v. PD Strategic Media Group, Inc., et. al.*
**Case No.: 12-CV-62056-ROSENBAUM/SELTZER**
**United States District Court, Southern District of Florida**

Matthew S. Nelles, Esq.
E-Mail: mnelles@broadandcassel.com
BROAD AND CASSEL
One Financial Plaza, Suite 2700
Ft. Lauderdale, FL 33394
Telephone No.  954-764-7060
Facsimile No.  954-761-8135
*Counsel for Defendants*
*Via transmission of Notices of Electronic Filing generated by CM/ECF*