**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 12-62056-CIV-ROSENBAUM/SELTZER**

GULFSTREAM MEDIA GROUP, INC.,
a Florida corporation,

                    Plaintiff,

v.

PD STRATEGIC MEDIA, INC.,
a Florida corporation, and
FORT LAUDERDALE MAGAZINE, INC.,
a Florida corporation,

                    Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on Defendants PD Strategic Media, Inc., and Fort Lauderdale

Magazine, Inc.'s Motion to Dismiss [D.E. 17].  The Court has carefully reviewed Defendants'

Motion, all supporting and opposing filings, and the record.  For the reasons set forth below, the

Court now denies Defendants' Motion to Dismiss.

### *I.  Background*[1]

#### *A.  Gulfstream*

Plaintiff Gulfstream Media Group, Inc., who claims to be the owner and senior user of the

common-law trademark for "Fort Lauderdale" for magazines and other periodicals, publishes several

lifestyle magazines, including *Boca Life Magazine, The Palm Beacher, Jupiter Magazine, Stuart*

---

[1]These facts, as presented in Plaintiff's Amended Complaint [D.E. 16] unless otherwise
stated, are taken as true for purposes of this Motion.

*Magazine*, and *Fort Lauderdale*.  D.E. 16 at ¶¶ 1, 9.  In addition to its print media, Plaintiff also provides electronic editions of its titles, including *Fort Lauderdale*, which is available over the Internet through the domain name and URL www.fortlauderdalemag.com.  *Id.* at ¶¶ 10, 16.

Plaintiff first began publishing and circulating magazines bearing the Fort Lauderdale trademark "as early as July 1, 1998."  *Id.* at ¶ 11.  Since at least October or November 1998, Plaintiff has consistently published seasonal or monthly issues of magazines bearing the Fort Lauderdale trademark.  *Id*. at ¶ 12.  Plaintiff distributes magazines bearing the Fort Lauderdale trademark to "select high end hotels, resorts, and marinas . . . ."  *Id.* at ¶ 13.  In addition, Plaintiff's magazines with the Fort Lauderdale trademark are marketed to the tourism and travel industries and are often distribution outside of Florida and to customers who come from other states and countries.  *Id.* at ¶ 14.  Over the years, magazines bearing the Fort Lauderdale trademark have generated more than $12 million in revenue for Plaintiff.  *Id.* at ¶ 15.

To attain this success, Plaintiff has expended "considerable time, effort and money advertising and promoting" the Fort Lauderdale trademark for and in connection with the sale of magazines and periodicals.  *Id.* at ¶ 18.  Indeed, Plaintiff has hired and maintained marketing and sales representatives throughout the United States at least, in part, for this purpose.  *Id.* at ¶ 18.  As a result, Plaintiff avers, "the products and services offered, sold, and distributed under the Fort Lauderdale trademark have come to be well known by the consuming public so as to create 'secondary meaning' in that the consuming public as come to associate the trademark Fort Lauderdale with the goods and service promulgated by Plaintiff."  *Id.* at ¶ 19.

## B.  Strategic and Fort Lauderdale Magazine's Use of "Fort Lauderdale"

On July 22, 1998, Radioland, Inc., filed for a trademark registration (the "Florida

Registration") for the word mark "Fort Lauderdale Magazine" with the Florida Department of State in connection with "printed matter, namely magazines addressing topics of general interest on a local and national level."  D.E. 16 at ¶ 20.  Although the Florida Registration claims a first use date of May 10, 1998, the specimen submitted in connection with the application for that Registration does not identify or corroborate this purported first use date.  *Id.* at ¶ 21.

Radioland purportedly assigned the Fort Lauderdale trademark to Defendant Fort Lauderdale Magazine, Inc. ("FLM"), on December 7, 1998.  *Id.* at ¶ 22.  Plaintiff contends upon information and belief that before 1999, neither Radioland nor FLM published, distributed, or sold in commerce any magazines or similar printed media bearing the Fort Lauderdale trademark.  *Id.* at ¶ 23.

On May 11, 1999, FLM filed for a trademark registration with the United States Patent and Trademark Office for the word mark "Fort Lauderdale Magazine" in connection with "printed publications namely magazines in the field of fashion, dining, theatre, art, music, sports, travel and other topics of general interest on a local, national, and international level in class 16."  *Id*. at ¶ 24. The mark "Fort Lauderdale Magazine" was registered on the United States Patent and Trademark Office's Supplemental Register on March 21, 2000 (the "Supplemental Registration").  *Id.* at ¶ 25. While the Supplemental Registration claims a purported first use date of December 1, 1997, and a purported first use-in-interstate-commerce date of June 4, 1998, Plaintiff avers that the specimen submitted in connection with that application neither identifies nor corroborates either of these dates. *Id.* at ¶ 26.

Plaintiff further asserts, upon information and belief, that between 1999 and 2011, FLM engaged in "only limited distribution of its products, and published no more than eleven . . . issues of magazines bearing the mark Fort Lauderdale Magazine."  *Id.* at ¶ 27.  Nor has FLM ever

maintained a full-time staff of more than one employee in connection with magazines bearing the Fort Lauderdale Magazine mark, Plaintiff contends, upon information and belief.  *Id.* at ¶ 29.

On January 18, 2012, FLM assigned any rights that it might have in the Florida Registration to Defendant PD Strategic Media, Inc.  *Id.* at ¶ 31.  Defendants FLM and PD thereafter, on November 1, 2012, launched a season magazine under the mark Fort Lauderdale Magazine.  *Id.* at ¶ 32.  The website for this magazine states, in pertinent part,

> In the front of the book, *Fort Lauderdale Magazine* will cover fashion, shopping, culture, and events.  We will do so with large, bold photographs and articles that offer a new take not found locally.  We will have no fluff, no filler.  In the back, we will publish the kind of long-form journalism unique to South Florida.  Our feature stories will be impeccably researched and fact-checked.  We will ask questions nobody else has asked, and we will challenge the establishment without endorsing candidates or political parties.  We will also offer features that entertain, fiction that's original, and page-turning photo essays that are stunning.
>
> Published six times a year, the magazine will inform, challenge, delight, and inspire the way we live, work, and play in the city.

*Id.* at ¶ 34 (citations and emphasis omitted).

### C.  The Litigation

Based on these allegations, Plaintiff filed the pending lawsuit.  In its current iteration, the Amended Complaint asserts four claims.  Count I alleges unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Count II seeks to cancel Defendants' Supplemental Registration.  The last two counts raise claims under state law.

In response to Plaintiff's Amended Complaint, Defendants filed the pending Motion to Dismiss.  Defendants' Motion rests on the premise that the only basis Plaintiff raises for federal jurisdiction in its Amended Complaint — Plaintiff's claim under Section 1125(a) — must fail

because Defendants have prior rights in the trademark and hold "longstanding, presumptively valid federal and Florida trademark registrations," while Plaintiff holds no trademark registrations.[2]  D.E. 17 at 7.  Because Plaintiff's sole basis for federal jurisdiction is lacking, Defendants argue, the Court should decline to exercise its supplemental jurisdiction over the state claims.

Plaintiff retorts that the Amended Complaint sufficiently alleges that it has superior rights to the Fort Lauderdale trademark, based on its earlier use of the mark and its consistent and continued use of the mark over the past fourteen years.  *See* D.E. 21.  Moreover, Plaintiff asserts, Defendants' use of the Fort Lauderdale Magazine mark does not rise to the level of protectable "use in commerce" under federal or state law because its prior use of the mark was *de minimis*, and Defendants have never engaged in use of the Fort Lauderdale Magazine trademark that would constitute a *bona fide* commercial use sufficient to support entitlement to federal or state trademark rights.  *Id.*

## *II.  Discussion*

### *A.  Legal Standard on a Motion to Dismiss*

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s

---

[2] Defendants also urge that 15 U.S.C. § 1119, pursuant to which Plaintiff appears to state its claim for cancellation of the Supplemental Registration, does not provide a basis for federal jurisdiction.  Plaintiff, however, implicitly concedes this, so the Court does not address Defendants' argument in this respect.

pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court must limit its consideration to the pleadings and exhibits attached to the pleadings and, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). Upon engaging in this analysis, a court should deny a motion to dismiss where the pleading asserts non-conclusory, factual allegations, that, if true, would push the claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570) (quotation marks omitted); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570) (explaining that allegations in a complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). A claim is facially plausible when the plaintiff's factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## B.  Count I States a Claim Under the Lanham Act, So This Court Enjoys Jurisdiction

Count I essentially asserts that Plaintiff holds superior rights to Defendants for the Fort

Lauderdale trademark, so Defendants' use of the mark constitutes unfair competition in violation of the Lanham Act.[3]   The Eleventh Circuit has recognized that Section 43(a) of the Lanham Act "is remedial in nature and should be interpreted and applied broadly so as to effectuate its remedial purpose."   *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citation omitted).   To state a claim under this provision, a party must demonstrate both that it had prior rights to the mark at issue and that the defendant adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two.   *Id.* (citation omitted).

A party establishes prior rights in a mark by demonstrating ownership rights and use of the

---

[3]In relevant part, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) provides,

(1)   Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which —

(A)   is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B)   in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

mark in commerce.[3]  *See id.* at 1194-95.  Even in the absence of a trademark registration, a party may acquire trademark ownership rights "through actual prior use in commerce."  *Id.* at 1193 (citation and quotation marks omitted).  Indeed, as the Eleventh Circuit has explained, "In the absence of registration, rights to a mark traditionally have depended on the very same elements that are now included in the statutory definition: the bona fide use of a mark in commerce that was not made merely to reserve a mark for later exploitation."  *Id.* at 1193 n.5 (citation and quotation marks omitted).

While the Eleventh Circuit has noted that the phrase "use in commerce" as it appears in the Lanham Act reflects Congress's authority under the Commerce Clause to regulate activity that "substantially affects" interstate commerce and is therefore "broad in scope," it has further explained that the use of a mark in commerce nonetheless "must be sufficient to establish *ownership rights* for a plaintiff to recover against subsequent users under section 43(a)."  *Id.* at 1195 (citation omitted) (emphasis in original).  To satisfy this requirement, a party must demonstrate (1) adoption and (2)

---

[3]Under the Lanham Act, the term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. . . . [A] mark shall be deemed to be in use in commerce —

   (1)    on goods when —

          (A)    it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

          (B)    the goods are sold or transported in commerce . . . .

15 U.S.C. § 1127.

"use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark . . . ." *Id.* (quoting *New England Duplicating Co. v. Mendes*, 190 F.2d 415, 417-18 (1st Cir. 1951)).

Courts evaluate whether a party has met these requirements on a case-by-case basis, considering the totality of the circumstances. *Id.* (quoting *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 433 (7th Cir. 1999)). Under this analysis, while evidence of sales is "highly persuasive," it is not necessarily required to demonstrate ownership rights. *Id.* (quoting *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1200 (9th Cir. 1979) (citation omitted)). But *de minimis* use of a mark does not suffice to support ownership rights. *Paramount Pictures Corp. v. White*, 31 U.S.P.Q.2d 1768, 1772-73, 1994 WL 484936, * 7 & *7 n.9 (Trademark Tr. & App. Bd. 1994); *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1088 (C.D. Cal. 2003) (citing *Chance v. Pac-Tel Teletrac Inc*, 242 F.3d 1151, 1157 (9th Cir. 2001). Indeed, the Trademark Law Revision Act, which Congress enacted in 1988, amended the definition of "use in commerce" for the purpose of "eliminat[ing] 'token use' as a basis for registration," instead contemplating "commercial use of the type common to the particular industry in question." *Chance*, 242 F.3d at 1156-57 (citation omitted). Therefore, the party claiming rights in the mark must show a *bona fide* intention to use the mark in commerce. *Id.* at 1157.

Here, Plaintiff alleges that, although Defendants registered the Fort Lauderdale Magazine mark on July 22, 1998, with the State of Florida, and on May 11, 1999, with the United States Patent and Trademark Office, they did not actually enjoy ownership rights in the mark as of those times because, according to Plaintiff, they had not actually engaged in "commercial use" of the mark prior to the registrations, and, Plaintiff claims, it had already obtained rights in the mark through its own

prior use of the mark in commerce.  More specifically, the Amended Complaint asserts that Plaintiff has consistently published seasonal or monthly issues of magazines bearing the Fort Lauderdale trademark since at least October or November 1998, that Plaintiff distributes magazines bearing the Fort Lauderdale trademark to "select high end hotels, resorts, and marinas . . . ," D.E. 16 at ¶ 13, that Plaintiff's magazines with the Fort Lauderdale trademark are marketed to the tourism and travel industries and are often distribution outside of Florida and to customers who come from other states and countries, and that, over the years, magazines bearing the Fort Lauderdale trademark have generated more than $12 million in revenue for Plaintiff.

In contrast, Plaintiff submits, Defendants never published a magazine under the "Fort Lauderdale Magazine" mark until 1999 — after Plaintiff claims to have already established ownership of the mark based on its publication of magazines prior to that date —  and in the intervening twelve years, Defendants have published a total of only eleven issues, a record of use that Plaintiff characterizes as "*de minimis*."  In addition, Plaintiff avers that Defendants do not have more than one full-time staff member and suggest that Defendants, in 2012, have only just demonstrated an intention actually to use the mark in commerce in the future.

Taking these facts as true, as the Court must on a motion to dismiss, Plaintiff has stated a claim under the Lanham Act.  In particular, Plaintiff has alleged sufficient facts that could establish its rights in the Fort Lauderdale mark, thereby laying the groundwork for an unfair-competition claim.

To be sure, the Court does not now determine that Plaintiff has demonstrated its ownership of mark.  Nor would it be appropriate for the Court to do so at this time.  Instead, as explained above, whether Plaintiff or Defendants own the mark — and, thus, whether Defendants have engaged in

unfair competition under the Lanham Act — requires a fact-intensive inquiry not suitable for disposition on a motion to dismiss.  On the current record, the Court does not possess the necessary factual information to evaluate this issue.  Nor, on a motion to dismiss, can the Court look beyond the four corners of the Amended Complaint.  Instead, the Court must wait to consider the evidence adduced later in the litigation to determine whether Defendants actually engaged in the first use of the mark that constituted "use in commerce," and, if so, whether, in the context of Defendants' business, their publication of eleven issues in twelve years constitutes more than *de minimis* use sufficient to establish their rights in the mark.

### *III.  Conclusion*

For the foregoing reasons, the Court hereby **DENIES** Defendants PD Strategic Media, Inc., and Fort Lauderdale Magazine, Inc.'s Motion to Dismiss [D.E. 17].

**DONE and ORDERED** at Fort Lauderdale, Florida, this 6th day of May 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

copies:      The Honorable Barry S. Seltzer
             Counsel of Record